We have today United States of America v. Juan Lorenzo-Zepeta. First we'll hear from Mr. Martin. May it please the court, my name is Scott Martin. I represent Mr. Lorenzo in this appeal of the 47-month sentence that he received upon his conviction for illegal re-entry. Mr. Lorenzo contends the district court plainly and reversibly erred when it failed to explain on the record its finding under rule 32 that there was no need for a precedence investigation report. Is it just the lack of explanation or is it the lack of PSR that you're appealing? It's the lack of explanation, your honor, that we're... That's it? You don't care about that there was no PSR? Well, that's correct, your honor. It's the... So then don't you have to show that the lack of explanation is made a difference? Well, your honor, we do feel that it's made a difference. It's, in this case, the sentence, the 47-month sentence, appears not to have been the product of a reasonable, of a consideration of all this. But we don't know that because we don't have a PSR. We don't even know what the guidelines range is, right? And your honor, that's part of the error that we're complaining. That's not because he didn't explain it. It's because he didn't have a PSR. Well, your honor, he didn't explain that the information in the record enabled him to consider the guidelines. It's our position that the court's explanation for its finding under Rule 32 must be explicit, must also identify the correct, the applicable guideline range, and also... Let me ask you this. The rule says you can't waive a PSR, but it does say... But it doesn't say you can't waive an explanation. So should we conclude that here the explanation was waived by the lawyer saying, I have no objection to you proceeding, judge, directly to sentencing? Well, your honor, I would disagree with that. It certainly wouldn't have been a knowing waiver in this instance. There's nothing that... I'm aware of no authority that says you can waive the explanation, which Rule 32 requires. Rule 32 and the guidelines, Section 681.1, specifically require the explanation. And there's nothing in there that says that the on-the-record explanation that the rule requires. And the harm in this case is that, as I said, is that the sentence appears not to have been the product of a meaningful consideration of all the relevant sentencing factors. And that is the same harm that in the case... Do we know as we sit here today what the proper guideline range is? Well, your honor, I believe based on the information in the Crawford and what I've seen, total offense level 10, criminal history category of 5. That would have been the guideline range. And that the court, in this case, had it walked through the proffer and maybe asked the probation officer to fill any information that potentially could have been missing and asked the parties to... What their understanding of the guidelines was that the court could have arrived at that guideline range, but it didn't. And instead... You're saying you did not appeal whether there was sufficient information in the record to give a proper sentence. So the only thing you're appealing is the explanation. So can we review whether there was enough in the record to give a proper sentence? Or do we accept that there was maybe enough in the record to give a proper sentence and the only problem here is the judge didn't give an explanation? Well, your honor, I would disagree that the only problem here is the failure to give an explanation. The court did essentially find that the guidelines were not applicable. If you look at the statement of reasons in paragraph 3, where it says the court determination of the advisory guideline range, in the blank where it says total offense level, the court put not applicable. And the criminal history category space says not applicable or N.A. Imprisonment range N.A., N.A. to N.A. months. And the court... It also did check the box that the record establishes no need for a PSR, but never explained that finding on the record and never said what it thought the guideline range was in this case. The court did say that it would rely on the 2012 judgment in the illegal reentry case that was before Judge Harmon, the fact that Mr. Lorenzo had received a 30-month sentence in that case and that he had returned four months after. But it's our position the judge was essentially stating that just as a way of dismissing the guidelines is essentially irrelevant in this case. And our position is that this plainly was not the explanation that's required by Rule 32. Rule 32 requires the court to find that the information in the record enables it to get meaningful consideration to all the sentencing factors, statutory sentencing factors, including the guidelines. But as we're here today, we can't even evaluate whether this is a within-guidelines sentence because we still don't have... We have your supposition on what the guidelines would show. But if it was a within-guidelines sentence, it would be entitled to a presumption of reasonableness and not much explanation is needed when you give a sentence like that. If it's as far above guidelines as you suggest, 47... Well, really, 48 months gave a month credit. 48 months versus 27, a little more explanation is needed. And so the lack of explanation problem that you're articulating looms larger. But I'm sitting here like, you still haven't given us the information we need. And typically the party who's seeking relief is the party who's got to give us the information we need to grant that relief. Well, I understand. Your Honor, I believe that I have given you the is no finding, no explanation on the record. And in Aguirre-Alva, which is the 2012 case that's cited in my brief, that was, in fact, a basis for finding under plain error review that the substantial rights... That the defendant's substantial rights were violated. In fact, on page 397, there's a paragraph there that the court says, the district court's violation of Rule 32C1A, however, was plain error that substantially affected Aguirre's rights because, as noted above, it is not clear that his sentencing guideline range was properly calculated or that this was the result of meaningful consideration of all the relevant sentencing factors. So we're arguing that it's the same harm here, that it does not appear to be a meaningful consideration of all the relevant sentencing factors. But in that case, didn't the court find that there was no reliable evidence in the record? And here you're saying there was no explanation, not that there was not reliable information in the record, but that the judge didn't explain himself. Yes, Your Honor, the judge didn't explain himself, and he went one step further as to essentially not consider one of the required factors, which is the guidelines, and found that in his statement of reasons. And we believe that this error also impugned the sentence. In sentencing Mr. Lorenzo in this way, it was in violation of law, which is Rule 32, also the sentencing guideline 6A1.1. And it looks to me here as if the judge was essentially proceeding as if we were operating in a pre-guidelines regime and forgot the admonition in gall that the starting place and initial benchmark in every case. It's a little hard to pass, you know, last week. And this is a judge, as all district judges, are sitting around sentencing every day, all day. I think he's well aware of the fact that there's a guidelines and that those get calculated, etc. I mean, there was a discussion of that. Well, we got 30 months before and the defense counsel said, I think that's the high end. I mean, there was a discussion of the guidelines. It's not like the judge had no idea there's such a thing as guidelines. That's true, but the judge did not identify what the guideline range was and in his statement of reasons indicated that the guidelines were A or not. Okay, but let's get to the really the fundamental point here. When you're on plain error review, there's also the fourth prong. And we have made clear in an en banc case and in recent cases that the fourth prong is not automatic if you meet the other three. So that's our exercise of discretion. Given that if the judge did forget there were guidelines, the defense counsel is certainly aware that there are guidelines. Why should we exercise our discretion, essentially, to grant relief here where a defense counsel said, we're okay with proceeding right to sentencing and never said, look, I don't know what the guidelines range is. Judge, we really need a PSR to get the guidelines range, I mean, etc., etc. And when the judge announced the sentence, said, Judge, whoa, wait a minute. We need a PSR because you're way over guidelines and we need to have that fact. Never said a word. Why should we exercise our discretion here under these facts? Your Honor, our position is that it affects the public reputation and the fairness of the proceedings. That we essentially have here a sentence whether or not counsel agreed or essentially acceded to the court's decision to go forward. Why can't counsel accede? I mean, he said on the record, do you want to go forward basically without a PSR? And defense counsel said, yes, I won't object. What do we do with that? The normal mechanism in the Southern District of Texas is local rules 32.1 provides a way of the defense counsel asking for a waiver of the PSR and it involves a motion that contains all the information that a PSR would normally have in it, which is a factual summary of the relevant conduct, criminal history, guidelines. We didn't have that and everybody knew when they got to the sentencing hearing there was no PSR and the judge says, do you want to proceed? And defense counsel says, I won't object, Your Honor. I wouldn't object. Your Honor, under guidelines section 681.1 it says the guideline that the defendant may not waive the PSR. It's the, and therefore it's incumbent upon the district court to make the required findings, the ones that we've discussed about how the information enables it to meaningfully exercise its sensing authority under section 3553. You're not complaining about the lack of a PSR, you're complaining about the lack of an explanation for the lack of a PSR. Yes, Your Honor, we are complaining about the lack of the explanation. It's our position that the explanation must be on the record and must identify the guideline range as well as the court should also give some indication that it has enough information about this. What was the guidelines range when Judge Harmonson is dead? 24 to 30 months based on a criminal history category of six total offense level of 10 and some of those offenses would have been too old to score in this case. Therefore his guideline range actually we believe would have been lowered 21 to 27 months in this case. Our defense counsel did give an estimate of 30 months being the top of the guidelines range that that appears to have been a tad bit high. There's no indication in the record that the judge actually accepted that as the correct estimate of the top of the guideline range and also in any event in Aguirre-Alva this court indicated that a defense counsel's estimate of the guideline range is not reliable information that a court can use as a finding. There has to be other evidence in the record indicating what the guidelines range was. If we had a case where there was sufficient information for the judge to give a proper sentence without a PSR report, okay, the guidelines were calculated, I got enough information, I'm going to sentence him, but doesn't give an explanation. Well, I think that what you just said might be the explanation. You know, if he says, here I have, you've given me these calculations and we've talked about them. I agree that this is the guideline range. I have this proffer from the government which outlines the criminal history. I find that, you know, there seem to be no problems with that. Therefore, I feel I have enough information to proceed without a PSR in this case. I mean, I think that would be an example of an instance when the court could. See, he kind of said all that except for the magic words. I have enough information. And we've repeatedly said that magic words aren't required even when it's a less deferential standard of review. So why would we exercise our prong for discretion here because of a lack of magic words when we know the judge had the information about what happened with Judge Harmon, had the sheet that showed prior convictions, had the information about the current, had a lot of information about this defendant and said so but just didn't say the magic words and I therefore conclude that I have enough information. That seems like a funny thing to find prong for discretion on. Your Honor, I disagree that magic words are required. That's not our position. We just feel there has to be some indication of that the court, you know, has to affirmatively indicate that I have enough here. And we're not saying he has to say, he or she has to say any particular words. And there are potentially would have been words that in this case the judge could have said that may have been sufficient. But the fact is the court didn't. And also the court didn't indicate that it had reviewed, for example, the PSR and the Judge Harmon case. All he said he had the judgment. So basically relying the judgment, he was relying on the proffer from that the government had submitted which had a criminal history which was not actually a complete criminal history. And the sentencing data sheet which has very minimal information and not anywhere near the level of information that is required by a PSR. Your Honor, lastly, I would like to mention that we have asked for resentencing before a new judge. We think it's important to avoid an appearance of an injustice. We think that when the judge indicated the therefore remanding before a new judge is what we're asking for just to avoid that appearance of injustice. Unless there are any further questions, Your Honor, I'll reserve my time. Was your office involved in the in the sentencing? Were you representing them down on the trial court level? Yes, Your Honor. Thank you. Yes, ma'am. Ms. Wilson. May it please the court. Reversible plain error did not occur here. Both Rule 32 and Section 6A 1.1 of the guidelines were satisfied. As we've been discussing, the purpose of a PSR is to inform the district court of the relevant facts, but it's not mandatory. Both the federal rules of criminal without a PSR, where two requirements are met, both of which were met here. First, the district court, the record has to establish that it meaningfully exercised its sentencing authority under Section 3553 and that the court explained its finding. This court, of course, has applied that rule. The guidelines are one of the things the judge is supposed to consider. They're not mandatory, but they must be considered, and we still, sitting here today, an oral argument in the district court, we don't know the guidelines' range. How could the judge have considered the guidelines? Two things, Your Honor. First of all, the judge asked the federal public defender, do you want to go forward? The federal public defender said we wouldn't object, which is effectively, yes, let's go ahead. And secondly, the federal public defender helped out the judge in its sentencing decision by offering that Judge Harmon, just a mere two years ago, had sentenced him to the top, what the court, quote, believed to be 30 months. So we know that Judge Hughes knew that that was the top of the guidelines. While the judgment, nobody introduced the judgment into this record, the Judge Hughes had that judgment for whatever reason, because he was looking at it and he said he relied on it. So what we know is that he had this judgment that the federal public defender said the top of the guidelines back then was 30 months ago. Judge Hughes made clear in his sentencing decision that Mr. Lopez had been serving this one-year sentence for deadly conduct. The facts in the record show that he was found. That's how the Judge Harmon felony, if you will, was discovered. Judge Harmon sentenced him to 30 months. He was back in May. And that did not sit well at all with Judge Hughes. And I set forth in the brief, and of course it's in the record as well, the chronology of this man's felonies. He admitted that to those things that I just said, that he had been serving this 30-month sentence and he returned four months after being deported. Actually, it was less than four months. And also, he agreed that he had either been deported or convicted approximately 13 times. And as Judge Hughes pointed out, that was more than one crime a year for 12 years. And Judge Hughes, again, knew that he had received the 30 months, knew that he had come back four months later. And when Judge Hughes gave both the federal public defender and the defendant an opportunity to offer mitigating circumstances, the defendant gave a rather perfunctory apology, and the federal public defender more or less offered a change of heart. He's 32 years old. He's changed his mind. He's seen the correct way. He's not going to come back, which Judge Hughes outright rejected because it had been a mere four months. If you look at this entire record contextually, Judge Hughes clearly explained fulfilling the requirements of both Section 6A 1.1 and Rule 32. As Judge Haynes pointed out, and as I said in my brief, magic words are not required. You have a skilled public defender who knows that a pre-sentencing report is required. Likewise, we all know the rules, but the public defender chose to go forward on behalf of her client. Now they're unhappy with the sentence. And the fact of the matter is the record is replete with the factual discussion for why Judge Hughes made the decision. Now, did he mention 3553A specifically? No. It is in the statement of reasons, but if you look at what Judge Hughes said, he clearly was relying on 3553A. The nature and circumstances of the offense, the defendant's history and characteristics, the seriousness of the offense, promoting respect for the law, providing punishment, and deterring Lorenzo from continuing to enter the country. All of that satisfies Rule 3553A, which of course is the first prong of Rule 32 or Section 6A 1.1. But even if this court were inclined to believe that plain error occurred, we still have the third and fourth prongs. And he can't fulfill both of them, let alone either of them, because he has to show there's a reasonable probability that he would have received a lower sentence. This is a fairly long sentencing hearing. This court has seen plenty of sentencing hearings. And this one is, I think it's fair to say, much longer than the average one, if you will. And Judge Hughes, not to be repetitive, but he set forth all these facts that he thought justified this 48-month sentence, which of course was reduced to 47 months because of the deportation time. But he fully articulated the reasons, and there's nothing in the record to even remotely suggest that the sentence would be lower. And again, I want to emphasize... He did say that this sentence imposed is below the advisory guideline range. And that makes no sense in light of what you said, that the belief was that the high end of the range was 30, and he gives 48. So is that so inconsistent with what happened at the sentencing hearing that we ought to remand this to get some clarification of why he checked the box below when it's clearly above any sentencing guideline anybody's posited to us thus far? But the box is also checked that he relied on 3553A. And I think that has to trump the statement of reasons, which really is a... I believe it's a sealed record, generally. Of course, we have access to it because of what we do. But the fact of the matter is we have what exactly came out of his mouth, with all due respect. But does this create confusion? I mean, the purpose of the explanation, it seems to me, would be for us to gain an understanding of what the judge is thinking. And it seems like what we can infer from the oral record is, you know, the judge is thinking he has enough information because of this, that, and the other. But the information the judge has is that the top range is 30 months. Then he checks this box that says below when he gave a 48-month sentence. So does that then give us a lack of confidence in the implicit explanation, the implicit finding that he has enough information, when he doesn't seem to know whether he's giving a below or above guideline sentence? I don't believe so. Because, again, I think the timing of all of this was the deadly conduct sentence. He was discovered during his confinement. And then Judge Harmon sentenced him. All of this was like an accordion. It was very, very tight. And the only opening you have is four months between the deportation and his back again. And that— I thought he served a 30-month sentence. Excuse me? I thought he served a 30-month sentence. He did. But then— Sometime. Right. But I'm saying what happened essentially is then he's out, and less than four months later, he's back again. And Judge Hughes' oral comments, that was extremely important to him. He said, you know, essentially, the best of lawyering can't justify any of this. And he chronicled every single one—I believe every single one—of his prior convictions. And another point that needs to be made, as Judge Hughes pointed out, he had graduated in his crimes. He had moved on, not just from immigration, but now he was tampering with a government record. He had done the deadly conduct. And Judge Hughes said to him, I hate to do this to you, but your conduct is getting worse. It's not better. These are not just immigration offenses. All of that factored into Judge Hughes' sentencing decision. Is it—in assessing prong four, should we look at the fact that the Aguirre case is the same district judge? And so there does seem to be a little bit of an issue. I don't think the district judge doesn't know about the guidelines or whatever like that, but there does seem to be a little bit of an issue with overlooking important procedural requirements, such as the PSR. And so does that weigh in our prong four analysis to say, well, you know, maybe we need to remind the judge of importance of these rules and send it back, even if it results in the same sentence? I think there should be some deference here to the district court judge, as there is in other aspects of this court's jurisprudence. You have to remember that these border state judges, western district, southern district, these types of judges are inundated with these types of cases. They're very skilled. They see these people all of the time. All the more reason why the judge should be very aware of the need for a PSR and at a minimum to know what the guideline range is and at a minimum to know whether he's giving a below or above guideline sentence. I mean, we have a skilled judge who does sentencings every day, all day, shouldn't be making this kind of mistakes, it seems to me. But it's not a mistake. Maybe we have to kind of say, well, we really respect you, judge, but this is something you need to be more cautious about. But it's not a mistake if he complies with Rule 32 and Section 6A1.1. He's authorized to do that. Yeah, but he clearly didn't. The question is whether it's plain error, reversible plain error, as you began your presentation with. There's no question in my mind that he didn't do what he's supposed to do in terms of the explanation. The question is, is there enough here to say it doesn't impugn the integrity and yada yada prongs three and four? Well, two points. First of all, you did have the federal public defender saying, yes, let's go ahead. And again, the federal public defender is the one that said the 30 months was the high end of the guideline in the Judge Harmon court, so she clearly, I believe it was woman, clearly was familiar with that. But secondly, on relation to the fourth prong, this court has said in the Davis case, as well as Flores, which cites Davis and I believe a couple others, that if the evidence or the facts suggest that the defendant's intending to resume the same activities, which the chronology here does suggest, then the court shouldn't exercise its discretion. And in fact, in Flores, it was used to prevent a miscarriage of justice, and in Davis, this court specifically said not every error that increases a sentence has to be below the statutory maximum. So the government's contention is none of the four prongs can be satisfied in this particular case. And unless the court has any additional questions, the government will yield the remainder of its time. Thank you. Mr. Martin. I know you were not the trial lawyer, but why would your office or whoever weigh the preparation of a pre-sentence investigation report? Well, Your Honor, first of all, we didn't unilaterally weigh, but we agreed with the court's decision to go forward without a PSR. Now, Judge Hughes' process is unusual. In most of the judges, we do follow the motion in accordance with the rule 32.1, local rule 32.1. Oftentimes, it does result in a favorable sentence for our clients to go forward without a PSR, usually in straightforward cases. This case is an example of one that did not work out that way. That being said, the government has made much of the fact that we had agreed to go forward, but I remind this court that we can't just waive the PSR. But you're not appealing that. You are not appealing that. As I asked you that repeatedly, you're only appealing the lack of explanation. And I think you can waive the lack of explanation. Just like you can waive a jury trial, you can waive a lot of things that are rights that people have. And so it seems to me that unless there's something that says you can't waive it, like there is about the PSR, that you can waive it. You didn't appeal the lack of PSR. You made that very clear to me. So we're focusing solely on the explanation. And to me, the lack of explanation has to itself be affecting the seriousness and integrity and everything. Not the lack of PSR, but the lack of explanation. How have you shown us that? How have you shown us that the lack of explanation itself violates the freedom of the law? Your Honor, to the extent that a defendant can waive the explanation, this would not have been a knowing waiver because we certainly didn't expect that Judge Hughes would not consider the sentencing guidelines. Wait, wait, wait. That's where I can't get my head around this. You waived the PSR. We agreed with it. You agreed to go without one. Yes, Your Honor. And then you said we're shocked, shocked that Judge Hughes didn't consider the applicable guideline. And he asked counsel for your client, what is the applicable guideline? They said, well, I don't know. Well, then how can you be shocked that Judge Hughes didn't consider the applicable guideline? Your Honor, that was actually the government. He asked what was the recommendation of the guideline range. The government said we don't know. We offered that the top of the range was 30 months. There's no indication the court accepted that. Our offer of 30 months was certainly an indication that we believed that he would consider the guideline range. But he went forward and he didn't consider it. In fact, in statement of reasons, as I pointed out. It sounds like he accepted the fact. He said, okay, assuming it's 30, I find for all these reasons 30 isn't enough. Your Honor, I disagree. I don't think he assumed it was 30 at all. I don't think he made any decision on what the guideline range was or whether he felt that our estimate was reliable. Back to the point, you said we couldn't know that he wouldn't comply with the guidelines or consider the guideline range. Well, that just doesn't add up when you proceed without a PSR. And you said we're not objecting to proceeding without a PSR. So then you can't be surprised that the judge wouldn't consider the properly calculated guidelines. I disagree, Your Honor. I don't believe that agreeing to go forward without a PSR is tantamount to agreeing to go forward without consideration of the guidelines. It would have been perfectly fine for the judge to discuss the guidelines with defense counsel and the agreement or decision on what the applicable guideline range is in this case. But then why doesn't the lawyer, who again, everybody in this room at this sentencing is skilled and knowledgeable. This isn't some person who'd never been in criminal court. So you've got the federal public defender, assistant federal public defender, realizing to their shock that the judge isn't considering the guidelines. Isn't that the point to go, Your Honor, I'm sorry, I thought we could proceed, but now I'm realizing no one knows what the guidelines are and that's one of the 35, 53A factors. We need to know what that is. I personally think it's X, Y, Z, and judge, I need you to make a finding on that. Something like that. There's nothing like that. Your Honor, I would argue that it didn't become completely clear to us that the judge was finding the guidelines inapplicable until the statement of reasons was issued and that you were gambling. Like you said, sometimes it works out better for your client and you agreed to proceed. Well, gambling, yes. Agreeing with the judge to go forward that we did agree. It's like asking for your money back once you put, gone all in and then the cards didn't come up right. Your Honor, I strongly disagree with that because I do believe that by deciding to go forward without a PSR, you're not, by agreeing to go forward without a PSR, you're not agreeing that the guidelines are inapplicable. Different question. Let's assume that the guidelines are just, it's not in the record. Let's assume that the high end of the guidelines is 27. Yes. And the judge here kind of seemed to go off of 30 and said, I don't think 30 is enough. Where is, and it seems to me under these circumstances, 48 is certainly within the range. He gave tons of reasons why he picked 48. Why should we exercise our discretion under the fourth prong to do anything? Your Honor, as Judge Haynes was saying, that there's certainly definitely some confusion about what the judge was thinking here. He did check the pox that this is a below guideline sentence and that makes absolutely no sense to me considering that the guidelines as I've calculated them. Also, we believe that under the fourth prong that it affects the public reputation. Okay. Don't you have the burden that you probably would have gotten a lower sentence? Where have you met that burden? Well, I believe that it is our position that a variance of essentially 20 months over the top of the 27 month sentence is extreme. That's a 74% upward variance given the circumstances of this case. Even with all of the judge's explanations of his quick return after serving a 30 month sentence in the prior conviction for deadly conduct, that's an extreme... 13 deportations, one a year? Yes, Your Honor. And we still believe... Even in this realm of illegal reentry, which we see umpty ump cases of, that's a lot. That's a lot of reentries. That's true, Your Honor, but it's still our position that that 74% upward variance is extreme. We also believe... Our cases have said you don't look at the percentage, I thought. We look at it... But, Your Honor, our position is that, and particularly if a PSR had revealed any mitigating factors in his background concerning his family circumstances, employment history, and the details of the prior offenses. Thank you. Thank you, Mr. Parker.